**Mark Steven NILL, Appellant–Respondent,**

v.

**Karen (Nill) MARTIN, Appellee–Petitioner.**

**No. 43A03–9506–CV–205.**

Court of Appeals of Indiana.

June 6, 1996.

John O. Feighner, Haller & Colvin, P.C., Fort Wayne, for Appellant.

Stephen P. Rothberg, Fort Wayne, for Appellee.

## OPINION

BAKER, Judge.

Appellant-respondent Mark Steven Nill appeals and appellee-petitioner Karen (Nill) Martin cross-appeals the trial court's order regarding modification of child support. Mark and Karen present a total of six issues for review, which we combine and restate as whether the trial court erred in: 1) finding that the original child support order had been modified by agreement and, as a result, in computing Mark's child support arrearage; 2) ordering Mark to pay both child support

and college expenses; 3) computing orthodontia expenses; and 4) awarding Karen attorney fees.

## FACTS

Mark and Karen's marriage was dissolved in October 1990. Karen received custody of the parties' three children and Mark was ordered to pay monthly child support in the amount of $2,100.00.[1] In December 1992, the parties' youngest son was killed in an automobile accident. Thereafter, Mark and Karen orally agreed to reduce Mark's child support obligation to $1,677.00 per month. Neither party sought a modification with the trial court, however, Mark immediately reduced his child support payments.

In March 1994, Karen filed a petition for modification with the trial court in which she requested additional child support for college expenses and an order regarding Mark's child support arrearage. In response, Mark filed a motion in June 1994 for the court to modify his support obligation and to determine each party's college expense obligation. The trial court held a hearing on Karen and Mark's motions in ·December 1994, after which it entered an order finding: 1) the original dissolution decree had been modified by agreement between the parties to reducè Mark's child support obligation; 2) there had not been a substantial change in circumstances to justify further modification of Mark's child support obligation; 3) Mark was required to pay 89% of his son's college expenses, totaling $7,686.92 for the current year; 4) Mark was required to pay orthodontia expenses of $3,477.84 for the current year; 5) Mark owed $1,329.92 in back child support; and 6) Mark was required to pay $2,025.00 in attorney fees to Karen. Record at 66–67. Both Mark and Karen appeal this order.

## DISCUSSION AND DECISION

### I. Standard of Review

 While both parties concede that neither requested the trial court to enter specific findings pursuant to Ind.Trial Rule 52(A), we note that they disagree regarding whether the trial court entered findings of fact and conclusions of law on their petitions to modify. Because we do not believe that the trial court's order contains specific findings, we will apply our general our standard of review. In the appellate review of modification orders, weight and credibility are disregarded, and only evidence and reasonable inferences favorable to the judgment are considered. *Kinsey v. Kinsey*, 640 N.E.2d 42, 43–44 (Ind.1994). A trial court's decision regarding modification of child support will not be set aside unless it is clearly erroneous, with due regard for the opportunity of the trial court to judge the credibility of the witnesses. *Id.* at 44.

### II. Modification of Support

In her cross-appeal, Karen contends that the trial court erred in recognizing her oral agreement with Mark to modify his child support obligation following the death of their youngest son in December 1992 because, by doing so, the court impermissibly retroactively modified Mark's child support obligation. As a result, Karen argues that the trial court erred in computing Mark's child support arrearage. Mark also argues that the trial court erred in computing his arrearage; specifically, he argues that the trial court's determination that he was in arrears for $1,329.92 is unsupported by the evidence.

 In its original decree, the trial court ordered Mark to pay the sum of $2,100.00 per month for the support of his three children. The parties do not indicate that the support award was divided per child, and as a result, we conclude that the award was an in gross order. Under an in gross order, the parent must pay the total support amount until the support payments are modified by court order or all of the children are emancipated or reach the age of twenty-one years. *Sterrett v. Hartzell*, 640 N.E.2d 74, 77 (Ind. Ct.App.1994). This rule is adhered to because it is possible that a lump sum support order could include a different amount of support for each child depending on the par-

---

1. Although the parties concede that the trial court ordered Mark to pay this amount of child support in its dissolution decree, the decree is not included in the record of the proceedings.

ticular needs of each child. *Kaplon v. Harris,* 567 N.E.2d 1130, 1132 (Ind.1991). As a natural extension of this rule, our Supreme Court has determined that a modification of a support obligation can only relate back to the date the petition to modify was filed, and not an earlier date. *Donegan v. Donegan,* 605 N.E.2d 132, 133, n. 1 (Ind.1992).

■ However, in considering in gross support orders, this court has recognized three exceptions to the general rule requiring a court order to modify a support obligation. Specifically, we have allowed a credit for an accrued support obligation when: 1) support payments have been made by the obligated party even though the payments are technically nonconforming; 2) the parties have agreed to and carried out an alternative method of payment which substantially complies with the spirit of the support decree; and 3) the obligated parent takes the children into his or her home, assumes custody over them, provides them with necessities, and exercises parental control over their activities for such a period of time that a permanent change of custody has in effect occurred. *DeMichieli v. DeMichieli,* 585 N.E.2d 297, 302 (Ind.Ct.App.1992). Here, Mark and Karen both concede that following the death of their son, they agreed to reduce Mark's support obligation. R. at 19, 26. We find, therefore, that Mark and Karen fall within the second exception to the rule requiring a court order to modify a child support obligation, which permits the parties to agree to an alternative method of payment which complies with the original support decree.

On its face, our holding appears to contradict *Kaplon v. Harris,* 567 N.E.2d 1130, in which our Supreme Court rejected a similar argument. However, we believe that *Kaplon* is distinguishable from the present situation. In *Kaplon,* a parent who had lost a child unilaterally reduced his support obligation to reflect the reduced number of children for which he was paying support and later sought to have the original decree modified. The supreme court found that the trial court erred in retroactively modifying the child support obligation pursuant to the parent's unilateral reduction beyond the date the par-

ent's petition for modification was filed. *Id.* at 1132. Here, however, Mark did not unilaterally reduce his support payments; rather, he and Karen expressly agreed to a modification of support. *See also Schrock v. Gonser,* 658 N.E.2d 615, 616–18 (Ind.Ct.App. 1995) (Baker, J., dissenting), *trans. denied* (where spouse acquiesced to reduced support payments for extended period of time, she was estopped from later seeking to enforce original support decree.) Thus, we hold that the trial court did not err in finding that Mark's child support obligation was modified pursuant to the parties' agreement in early 1993.

■ Having determined that the trial court correctly found that Mark's support obligation was modified in early 1993, we now must consider whether the trial court correctly calculated Mark's child support arrearage. Initially, we note that the parties disagree regarding the date on which Mark's reduced support obligation was to become effective. According to Mark, the modification was effective in January 1993 because that was when the parties agreed to reduce Mark's support payment. However, Karen argues that although they discussed reducing Mark's support obligation in January, they did not actually agree on the amount of the reduced support obligation until March 1993. The determination of the effective date of an oral agreement is a question for the trier of fact. *Tuthill Corp. Fill–Rite Div. v. Wolfe,* 451 N.E.2d 72, 77 (Ind.Ct.App.1983) (terms of oral contract are a matter to be interpreted by jury). Here, although the trial court's order of modification merely stated that the parties modified the support obligation in "early 1993," R. at 66, its determination of the total arrearage indicates that the trial court used March 1993 as the effective date of the parties' agreement to modify Mark's support obligation. Because the evidence regarding the effective date of the agreement is in conflict, we cannot say that the trial court's determination that the agreement took effect in March, and not January, 1993 was clearly erroneous.

■ Next, we must determine whether the trial court erred in determining that Mark was in arrears for $1,329.92. During the

hearing, Karen presented evidence that Mark owed $1,983.86 in back child support. Specifically, she alleged Mark owed:

| June 1992 | $ 220.38 | |
|-----------|----------|---|
| December 1992 | $ 433.56 | |
| February 1993 | $ 600.00 | |
| June 1993 | $ 190.06 | |
| July 1993 | ($ 185.82) | (overpayment) |
| January 1994 | $ 303.00 | |
| February 1994 | ($ 43.28) | (overpayment) |
| July 1994 | $ 335.40 | |
| August 1994 | $ 130.56 | |
| | $1983.86 | |

In response, Mark argued that he did not owe back support for any of these months, primarily because he had custody of his children for at least seven consecutive days during these months, entitling him to reduce his child support obligation by 20%.[2] The trial court, in determining Mark's child support arrearage to be $1,329.92, adopted Karen's figures regarding the arrearage but subtracted the amounts owed for June and December 1992 on the basis of Mark's explanation.[3] We cannot say, in light of the conflicting evidence, that the trial court erred in finding Mark in arrears for $1,329.92.

### III. College Expenses

■ Next, Mark contends that the trial court erred in determining that there had been no change of circumstances warranting a further reduction of his child support obligation. Specifically, he argues the trial court erred in ordering him to pay both child support at its previous level and, additionally, a significant portion of his son's college expenses.

Ind. Child Support Guideline 3(E) provides that any extraordinary education expense incurred on behalf of children may be added to the basic child support obligation. Commentary 3(b) to this guideline provides that, if college expenses are provided separate from child support, "support paid to the custodial parent should be reduced or eliminated, at least while the student is away from the household and at school." *See also Vore v. McFarland,* 616 N.E.2d 790, 792 (Ind.Ct.

App.1993). In keeping with this guideline, we have held that when a parent is obligated to pay a portion of a child's college expenses in addition to child support, the trial court must consider full or partial abatement of a parent's basic child support obligation. *In re Marriage of Tearman,* 617 N.E.2d 974, 977 (Ind.Ct.App.1993). This avoids the duplication of payment for a single expense, resulting in a windfall to the custodial parent. *Id.*

In the instant case, the trial court found that there was not a substantial change of circumstances to justify reducing Mark's monthly support obligation from $1,677.00. However, in addition to his support obligation, the trial court ordered Mark to pay 89% of his son's college expenses, which totaled $7,686.92 for the current year. The trial court erred in failing to abate Mark's support obligation for the time in which his son is at school and away from Karen's household. Thus, we remand this case to the trial court with instructions for it to recompute Mark's monthly child support obligation for those months when his son is attending college on campus and to include either a full or partial abatement of the child support.

### IV. Orthodontia Expenses

Next, Mark contends the trial court erred in ordering him to pay "his share of the orthodontia expenses" in the sum of $3,477.84. Specifically, Mark argues that this order is not supported by the evidence.

Ind.Code § 31–1–11.5–12(b) provides that a child support order may include "special medical, hospital, or dental expenses necessary to serve the best interests of the child." Here, pursuant to the original dissolution decree, Karen was required to pay the first $1,600.00 of the childrens' uninsured medical expenses and Mark was to pay any amounts in excess of $1,600.00. Although the parties agreed to modify Mark's support obligation in early 1993, they did not reduce Karen's portion of the childrens' medical expenses to reflect two, rather than three children. As a

---

2. The parties stipulate that pursuant to the trial court's original support order, Mark was entitled to a reduction in child support when he had physical custody of his sons for at least seven nights during the month. However, as we noted

above, the original support order is not contained in the record.

3. $1,983.86 − $220.38 − $433.56 = $1,329.92.

result, the trial court ordered Karen's responsibility for uninsured medical expenses to be decreased effective on March 24, 1994, the date the petition for modification was filed. Neither party disputes that Karen's obligation should be reduced by one-third to $1,066.00.

In 1994, the childrens' medical expenses totaled $4,540.38, including orthodontia expenses. Although Karen testified that the orthodontia expenses totaled $3,305.00, she stated that because she paid the total expenses up front, rather than make monthly payments, she received a 5% discount. It is unclear whether the trial court's award of orthodontia expenses reflects this discount. Further, it is unclear how the trial court arrived at its figure of $3,477.84 as the amount owed by Mark, and whether this amount includes only orthodontia expenses or all medical expenses owed by Mark for 1994. Thus, because we are unable to reconcile this amount with the evidence presented at the hearing, we remand this case to the trial court with instructions for it to either enter findings to support its determination that Mark owed $3,477.84 or to reconsider the amount of medical and orthodontia expenses owed by Mark.[4]

### V. Attorney Fees

■ Finally, Mark contends the trial court erred in awarding Karen $2,025.00 in attorney fees. We review an award of attorney fees for an abuse of discretion. *Truman v. Truman*, 642 N.E.2d 230, 238 (Ind.Ct.App. 1994). The trial court has broad discretion in assessing attorney fees and reversal is warranted only when the trial court's award is clearly against the logic and effect of the

facts and circumstances before the court. *Tearman*, 617 N.E.2d at 978.

■ In making an award of attorney fees, the trial court must consider the parties' relative income resources, ability to engage in gainful employment, and ability to earn an adequate income. *In re Marriage of Pulley*, 652 N.E.2d 528, 532 (Ind.Ct.App. 1995), *trans. denied.* However, the court need not give reasons for its determination. *Id.* Here, the record indicates that, at the time of the hearing, Mark was a vice-president, director, and stockholder of Pease Windamatic Systems. For 1993, Mark reported approximately $100,000.00 in income, while Karen earned approximately $8.00 per hour for a forty hour week. Considering this disparity in income, we cannot say that the trial court's award of attorney fees was clearly against the logic of the facts and circumstances presented. *Id.* There is no abuse of discretion here.[5]

### VI. Conclusion

In sum, we affirm the trial court's determination that Mark and Karen agreed to modify Mark's child support obligation in 1993, and, on the basis of that finding, that the trial court did not err in computing Mark's child support arrearage. Further, we find the trial court did not err in awarding Karen attorney fees. We remand this case, however, for a determination regarding the abatement of Mark's child support obligation while his son is away at college and regarding Mark's share of the medical and orthodontia expenses.

Judgment affirmed in part and remanded.

---

4. The trial court's ordered amount may have been derived from the total medical expenses, $4,540.38, minus Karen's yearly obligation of $1,066.00. However, this equals $3,474.38, not $3,477.84, the amount ordered by the trial court.

5. Additionally, Mark contends that the trial court's order, which provides for attorney fees because "the trial court finds that the unwillingness of the respondent to pay a portion of the college expenses was totally unwarranted under the facts of the case" is erroneous because Karen did not request attorney fees with regard to the college expense issue. R. at 67. Rather, Mark

argues that Karen only requested attorney fees with regard to the arrearage issue and that the trial court did not award fees for this issue because it found that Mark's arrearage "was due to a reasonable misunderstanding between the parties and is not contemptuous." R. at 67. Regardless of whether Karen specifically requested attorney fees with regard to the college expense issue, the trial court is entitled, pursuant to I.C. § 31–1–11.5–16, to award attorney fees on its own motion. Thus, Mark's argument is unavailing.

GARRARD, J., concurs.

STATON, J., concurs in part and dissents in part with separate opinion.

STATON, Judge, dissenting in part and concurring in part.

I dissent to Issue II of today's opinion for these reasons:

I. The Majority's determination that Mark's child support obligation can be retroactively modified *prior* to the date he filed his petition contravenes binding precedent set by the Indiana Supreme Court.

II. The Majority's opinion undermines the overall function of child support which focuses on the needs of the children, not that of the parents.

The Majority determines that the trial court did not err when it recognized an oral agreement between Mark and Karen which allowed Mark to retroactively reduce his child support obligation prior to Mark's filing of his petition for modification in June 1994. This determination violates precedent set by the Indiana Supreme Court.

The Indiana Supreme Court has expressly stated that retroactive modification of support payments is erroneous if the modification relates back to a date earlier than the filing of a petition to modify. *Donegan v. Donegan*, 605 N.E.2d 132, 133, n. 1 (Ind. 1992). A trial court has the discretion to make a modification of support payments effective either at or any time after the filing of the petition. *Id.*

The Indiana Supreme Court has explained that the procedural rules for the modification of child support when one of several children

dies are similar to those when a child is emancipated, as both events terminate the obligation to support a child. *Kaplon v. Harris*, 567 N.E.2d 1130, 1132 (Ind.1991). This rule provides:

> Under an undivided support order for several children, the obligated parent may not arbitrarily reduce the support payment. Instead, the obligor should petition the trial court for an examination of current conditions to determine if modification of the order is proper.... [Thereafter] the trial court [is] empowered to credit, modify or terminate [the obligation of] support payments coming due after that date.

*Id.* at 1132–1133.

In *Kaplon*, the obligor was required to pay $96.00 per week child support for his three children. *Id.* at 1131. One year and a half after the death of one of the children, the father petitioned the trial court for a modification of or termination of support as his other two children were emancipated. *Id.* The trial court credited father with one-third of every support payment due after the date of his son's death on October 10, 1987. *Id.* at 1132–1133. The Indiana Supreme Court determined that this was an impermissible retroactive modification and indicated that the trial court could only modify the Father's obligation back to the date he filed his petition, April 26, 1989. *Id.* at 1133.

Here, the Majority upholds the trial court's impermissible retroactive modification prior to the date Mark filed his petition for modification based upon Mark and Karen's agreement. Yet, consideration of this agreement is erroneous.[6] Out-of-court agreements regarding the modification of child

---

**6.** The Majority contends that this case is distinguishable from *Kaplon* because Mark and Karen mutually agreed to the reduced support. In so doing, the Majority indicates that three exceptions exist to the retroactive modification rule, including an exception which allows modification when "the parties have agreed to and carried out an alternative method of payment which substantially complies with the spirit of the support decree." Op. at 939 (citing *DeMichieli v. DeMichieli*, 585 N.E.2d 297, 301 (Ind.Ct.App. 1992)). However, the Indiana Supreme Court has set forth these narrow exceptions *only* in the context of an obligated parent seeking credit against a support obligation for payments not conforming to the support order. *See O'Neil v. O'Neil*, 535 N.E.2d 523, 524 (Ind.1989). The court has not applied these exceptions in the case of the retroactive modification of child support prior to the filing date of a petition for modification and in *O'Neil*, the court expressly approved this court's decision applying the retroactive modification rule which allowed for a partial reduction of child support retroactive to the date of filing of the petition only. *Id.* at 523. As a result, the Majority's attempt to distinguish this case from *Kaplon* based upon the fact that Mark and Karen mutually agreed to the reduction is in error as the parties' agreement has no effect in this context. *See id.* and *Brewer, infra.*

support are not enforceable unless first approved by the trial court or merged into a court order. *Brewer v. Brewer*, 506 N.E.2d 830, 831 (Ind.Ct.App.1987), *reh. denied, trans. denied* (quotations omitted). A child's needs compel the principle that out-of-court support agreements must be judicially recognized or incorporated into a court order to be enforceable. *Id.*

To allow otherwise would undermine the overall function of child support which focuses on the needs of the children not that of the parents as neither parent should be able to contract away funds specifically intended to benefit their children.[7] *Id.* The rigidity of the retroactive modification rule is necessary to ensure protection of the interests of the child and to disallow parents from making child support arrangements at their own convenience which may be motivated by their own self-interests rather than the interests of the child.

While application of the rule imposes a harsh result considering the tragic circumstances presented here, this court is bound by precedent set by the Indiana Supreme Court. Until our highest court decides differently, I must follow its rule. The Majority's decision today merely erodes our established doctrine of *stare decisis*.

For these reasons, I dissent to the Majority's determination allowing the retroactive modification of Mark's child support obligation prior to the date of filing of his petition for modification. I would remand this case to the trial court for a new calculation of the amount of support due which accumulated prior to the date of the filing of the petition. In all other aspects, I concur.

---

**7.** The *Brewer* court noted that a child support award makes the noncustodial parent a debtor to the custodial parent who serves as a trustee of the funds for the benefit and use of the child. *Brewer, supra* (citing *Corbridge v. Corbridge*, 230 Ind. 201, 102 N.E.2d 764 (1952) and *Grace v. Quigg*, 150 Ind.App. 371, 276 N.E.2d 594 (1971)).