**Mark Steven NILL, Appellant (Respondent Below),**

v.

**Karen (Nill) MARTIN, Appellee (Petitioner Below).**

No. 43S03–9611–CV–704.

Supreme Court of Indiana.

Oct. 27, 1997.

John O. Feighner, Fort Wayne, for Appellant.

Stephen P. Rothberg, Fort Wayne, for Appellee.

### ON PETITION TO TRANSFER

SHEPARD, Chief Justice.

The Court of Appeals held in this case that divorced parents who agreed to child support payments different than those ordered in their decree of dissolution "substantially complied" with the decree. We hold that such agreements must be submitted for court approval before they can be given legal effect.

## I. Facts

The marriage of appellant Mark Nill and appellee Karen (Nill) Martin ended in dissolution during October 1990. The trial court gave Karen Martin custody of the couple's three minor children, George, Bryan, and Daniel. It ordered Mark Nill to pay $2,100 per month for support of the three boys in what the Indiana Court of Appeals determined was an order in gross.

While visiting their father, all three boys were involved in a serious automobile accident on December 29, 1992. George and Bryan were injured severely enough to require medical treatment, and the youngest boy, Daniel, was killed.

In January 1993 Mark Nill made his usual $2,100 payment. Sometime in February 1993, Mark Nill talked to Karen Martin about reducing child support payments in the aftermath of Daniel's death. (R. at 152.) On his own initiative, he decreased the support payment to $1,500 for February 1993. (R. at 152–153, 205–06.) In March, Karen Martin's lawyer sent Mark Nill a letter agreeing to accept support of $1,677 per month. (R. at 152–153, 205–06.)

There is conflict in the record about when payment of the new support amount was to be effective.[1] The new agreement was informal; it was not submitted for court action.

About a year later, on March 24, 1994, Karen Martin filed a petition to modify, later amended and supplemented. Karen Martin asked the court to order Mark Nill to contribute toward the college expenses of their eldest son Bryan, and to pay any child support arrearage. Mark Nill responded with his own petition for modification. He contended that Daniel's death was a change of circumstances which required a change in the support amount. He also sought a determination of responsibility for Bryan's college expenses.

The trial court issued a modified order which recognized that informal agreements modifying child support cannot alter the legal obligations of court decrees. It nevertheless found that "equity dictates that the court enforce and adopt this order" as though the court had previously approved it. (R. at 66.) It also disposed of other issues raised by the petitions of the parties.

Each side appealed. The Court of Appeals considered whether the trial court: 1) erred in giving legal effect to the parties' modification agreement, pertinent to computing Mark Nill's child support arrearage; 2) erred in ordering Mark Nill to pay both child support and college expenses; 3) erred in computing orthodontia expenses; and 4) erred in awarding Karen Martin attorney fees. *Nill v. Martin*, 666 N.E.2d 936, 937–38 (Ind.Ct.App. 1996).

We grant transfer to consider the first issue: whether the trial court erred in finding that the original support order had been effectively modified by the couple's informal agreement. As to the remaining issues, we summarily affirm the Court of Appeals. Ind. Appellate Rule 11(B)(3).

## II. Modification of Child Support

The Indiana Code provides that a court may modify a child support award, "only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." Ind.Code Ann. § 31–1–11.5–17(a)(1) (West Supp.1996). The Code explicitly limits retroactive modifications of delinquent support payments. Ind.Code Ann. 31–2–11–12(a) (West Supp. 1996). These legislative policies concerning modification are described in our caselaw as follows:

> It has long been the rule of this state that a noncustodial parent may not unilaterally reduce proportionately a support order in gross for several children but must make payments of support in the manner, amount and at times required by the support, at least until such order has been set aside.

---

1. Martin's "Amended and Supplemental Petition" states she and Nill agreed that support would be modified to $1,677 a month beginning in January 1993. (R. at 19.) Martin's own testimony, however, shows she and Nill did not even begin discussing a change in support until February 1993 and came up with an "agreeable number" in March. (R. at 153.)

*In re Marriage of Baker*, 550 N.E.2d 82, 87 (Ind.Ct.App.1990); *Stitle v. Stitle*, 245 Ind. 168, 182, 197 N.E.2d 174, 183 (1964).

Our law regards custodial parents who receive child support funds as trustees who hold the funds for the use and benefit of the child. *Corbridge v. Corbridge*, 230 Ind. 201, 102 N.E.2d 764 (1952). The custodial parent, as a constructive trustee, may not contract away the benefits of the trust. *Grace v. Quigg*, 150 Ind.App. 371, 379, 276 N.E.2d 594 (1971).

A corollary to this rule provides that once funds have accrued to a child's benefit under a court order, the court may not annul them in a subsequent proceeding. *Zirkle v. Zirkle*, 202 Ind. 129, 172 N.E. 192 (1930). This is true even with respect to the death of a child who is one of several children who are the beneficiaries of an order in gross. *Kaplon v. Harris*, 567 N.E.2d 1130 (Ind.1991).

In this case, the Court of Appeals correctly noted the foregoing rules. *Nill*, 666 N.E.2d 936, 938. It nevertheless affirmed the trial court's retroactive modification of support. *Nill*, 666 N.E.2d at 939. It cited three narrow situations in which credit for accrued support obligations has been allowed: 1) when support payments have been made by the obligated party even though the payments are technically non-conforming; 2) when the parties have agreed to and carried out an alternative method of payment which substantially complies with the spirit of the decree; and 3) when the obligated parent takes the child into his or her home, assumes custody, provides necessities, and exercises parental control for such a period of time that a permanent change of custody is demonstrated.[2] The Court of Appeals held that Nill had substantially complied by paying through an agreed alternative method.

This holding confuses *the method of payment* with *the amount of payment*. It is true that credit has been allowed for payments that do not technically conform to the original support decree. For example, where

the obligated parent makes payments directly to the custodial parent rather than through the clerk of the court, we have recognized these payments when there was sufficient proof to convince a trier of fact that the required payments were actually made. *O'Neil v. O'Neil*, 535 N.E.2d 523 (Ind.1989). We have also recognized "substantial compliance" where the parties agree to an alternative method of payment that comports with the spirit of the original decree. *O'Neil*, 535 N.E.2d at 524 (citing *Payson v. Payson*, 442 N.E.2d 1123, 1129 (Ind.Ct.App.1982)). In *Payson*, for example, the non-custodial father typically paid through the clerk but gave cash directly to the mother, by her agreement, during weeks when he missed the payments at the clerk's office. *Id.* at 1127, 1130.

By contrast, the informal arrangement between Mark Nill and Karen Martin reduced the actual amount of support below that ordered in the divorce decree. The new informal agreement thus did not "substantially comply with the spirit of the original support decree." *O'Neil*, 535 N.E.2d at 524.

The legislative and judicial policies against informal modification may work an occasional inequity, but the relatively bright-line rules are hardly without their benefits. If parties could effect legal modifications of child support through informal means, disputes over amounts and methods and effective dates would certainly multiply. Disagreements over such issues have led to expensive litigation in this case through three levels of courts. A bright-line rule limiting informal arrangements and effecting modifications only after the date a petition for modification is filed short-circuits many disputes. The time and money spent litigating informal agreements that later go awry could be well spent for the support of children. Compared to the cost of litigation such as that before us now, submitting for court approval an agreed order modifying is among the simplest of legal tasks. It is certainly within the capabilities of diligent laymen.

---

2.   We recognized these three exceptions in *O'Neil v. O'Neil*, 535 N.E.2d 523 (Ind.1989), though on reflection the first two situations seem about the same. The Court of Appeals has recited them as

three different exceptions. *See, e.g., DeMichieli v. DeMichieli*, 585 N.E.2d 297, 302 (Ind.Ct.App. 1992), and *In re Marriage of Baker*, 550 N.E.2d 82, 87 (Ind.Ct.App.1990).

Judge Shields outlined the rationale for decisions which promote consistency and predictability in the law of child support in *Whitman v. Whitman*, 405 N.E.2d 608 (Ind. Ct.App.1980). In declining to give credit for non-conforming payments, she wrote:

> One purpose of a rule of law is to provide, with a reasonable degree of certainty, a rule to which an individual can conform his conduct ... While we do not condemn or look askance at equity, nevertheless, in this particular area we feel predictability and certainty has superior merit. The obligated parent knows payment as ordered is required and any deviation can result in court censure. The parent receiving the support can reasonably plan and depend on the ordered support in fulfilling the awesome responsibility of providing day-to-day care and support for the child in his or her custody. Both parties know that if circumstances change, or any question arises concerning the use of support funds, or the necessity of the payment that the available remedy is through judicial review, as soon as possible.

*Whitman*, 405 at 613.

### III. Conclusion

We remand this matter for a computation of the support owed by Mark Nill giving effect to the court's modification only from the date of the petition for modification. The trial court is otherwise affirmed.

DICKSON, SULLIVAN and SELBY, JJ., concur.

BOEHM, J., dissents with separate opinion.

BOEHM, Justice, dissenting.

I respectfully dissent. In this case it is clear that both the custodial parent and the non-custodial parent agreed that it was appropriate to reduce the overall support level as a result of the death of one of the three children. Death of a child, like emancipation, is plainly a legitimate reason to adjust an in gross support order by some amount. Ind. Code § 31–1–11.5–12(e)(1) (Supp.1996) (the duty to support a child terminates at the time of emancipation). Identification of a death requires no legal advice or ruling. In this regard, it is unlike emancipation, which presents a question of law and is therefore an even better candidate to be resolved without unnecessary legal intervention. More importantly, as the Court of Appeals noted, the determination of the amount properly attributed to the two surviving children in this case was not implemented unilaterally by one parent. Rather, the precise amount was agreed. There is no claim of overreaching, duress, or anything else that suggests that one of the parents was not able to evaluate the situation and agree to an appropriate adjustment. Nor is there any claim of collusion to divert trust funds from a child.

I agree with the Court of Appeals majority that this case fits within the concept of the "substantial compliance" exception to the requirement of court approval. Prior cases have permitted the parties to agree without court intervention, for example, that property of the value of the order may be provided in lieu of cash. This case presents a very similar issue in that it raises the question whether the parties may agree on the portion of an in gross order attributable to one child. I would recognize an exception to the general rule that modification of in gross orders requires court approval. If the custodial and non-custodial parents agree on a reduction in the total level of support after the death or emancipation of a child under an in gross order, I would not require resort to the courts. The statute explicitly permits a parent unilaterally to terminate support obligations in the event of emancipation of a child. It does not speak directly to the consequences of a death, but neither does it prohibit modification by agreement under those circumstances. I would not prevent either party from petitioning at any time for modification of the agreed amount attributable to the remaining children. But until that happened, I would not force the parties to consult or engage legal advice where their reasonable expectation is that none is needed.

I do not believe my position does violence to existing precedents. The majority cites cases such as *Kaplon v. Harris* and *In re Marriage of Baker*. These cases, among oth-

ers, stand for the rule set out in *Kirchoff v. Kirchoff,* 619 N.E.2d 592, 596 (Ind.Ct.App. 1993). *Kirchoff* held that a parent subject to an order in gross—i.e., one that provides a lump sum for more than one child—must pay the total amount specified in the order or apply for the modification of the order by a court. This rule and the cases that created and applied it dealt with instances of unilateral action by the obligated parent. However, they say nothing about the power of the parties to reach an agreement on their own, as to the amount attributable to each child. That is what occurred in this case. Thus, the rule in *Kirchoff* is sensible to protect the custodial parent and the child from a unilateral decrease in support by the non-custodial parent subject to an in gross order. But its rationale disappears where both parents agree. In the absence of collusion the parents can reliably be viewed as adequate representatives of the remaining children's interests. *Schrock v. Gonser,* 658 N.E.2d 615 (Ind.Ct.App.1995), *reh'g denied, trans. denied* is to the same effect. In that case the majority found no agreement where the husband had unilaterally reduced his support obligation over a nine year period as each of his children became emancipated. Eventually, the wife decided to seek arrearage for the unpaid child support. The majority cited *Kirchoff* and *Ort* and held for the wife, noting that even if she had tacitly agreed to the reductions, the court was free to disregard them. Because the majority, unlike the dissent, found no agreement as to the reduction, *Schrock* simply follows *Kirchoff.* To the extent the majority in *Schrock* suggests that an explicit agreement would not be honored, I agree with the dissent in that case.

In addition, another line of cases holds that retroactive modification of support payments is erroneous if the modification relates back to a date earlier than the filing of a petition to modify. *Donegan v. Donegan,* 605 N.E.2d 132, 133 n. 1 (Ind.1992); *Reeves v. Reeves,* 584 N.E.2d 589, 594 (Ind.Ct.App.1992), *trans. denied.* These cases deal with the limits on the power of a *court* to make adjustments in support for a given child, not the power of the parties to reach an agreement as to the proper allocation of amounts among children subject to an order in gross.

Finally, a handful of cases support the proposition that "[a]n agreement to forego child support is unenforceable because the parent has no right to contract away the child's support benefits." *Ort v. Schage,* 580 N.E.2d 335, 336 (Ind.Ct.App.1991); *Pickett v. Pickett,* 470 N.E.2d 751 (Ind.Ct.App.1984); *Haycraft v. Haycraft,* 176 Ind.App. 211, 375 N.E.2d 252 (1978); *Grace v. Quigg,* 150 Ind. App. 371, 276 N.E.2d 594 (1971). These cases concern situations where the husband and wife agree to a reduction or increase in the amount of support for a child that was entitled to support both before and after the agreement. The cases hold the court may refuse to honor the agreement in order to protect the child. But these cases do not involve the death or emancipation of a child. Upon death or emancipation, the in gross order no longer accurately reflects an appropriate amount of support. The agreement by the parties, then, may fairly be viewed as an implementation of the in gross order so as to fit the current changed circumstances. It is simply an agreement as to what the court ordered support obligation should become under an in gross order that, upon death or emancipation, can no longer be accurate. Thus, *Brewer v. Brewer,* 506 N.E.2d 830 (Ind.Ct.App.1987), *reh'g denied, trans. denied,* which prohibits altering the support for a given child without court approval, is also inapposite.

Rules of law should be structured so far as possible to facilitate the affairs of ordinary citizens without the need for legal advice. Most people believe that a deal is a deal if it is clear, fair, and knowingly reached through arms length bargaining. The requirement of the majority that court approval be sought in the interest of a bright line rule seems to me to miss the point that a bright line rule works to eliminate controversy and expense only if it is also a common sense rule that will be anticipated and understood by the people who are to follow it. In some circumstances everyone knows and understands that legal assistance is required and that the rules are sufficiently complex that an intuitive resolution by lay persons may not work. In this situation, however, there is nothing to suggest that the arrangement worked out by the

parties would not be honored by the courts. Indeed, the parties were in fact represented by counsel who communicated the agreement to adjust the support amount. Presumably this was done in good faith. That counsel also appear not to have anticipated that the agreement would be deemed unenforceable simply underlines the counterintuitive result generated by the requirement of court approval. The majority suggests that its bright line rule will help prevent expensive litigation. But the rule also undoubtedly forces parties into court unnecessarily. It is true that in this case the parties found themselves in a dispute on another issue that required court intervention notwithstanding their agreement as to the proper adjustment for the deceased child. However, it is unknown how many others are cheerfully operating without judicial intervention under agreements that we now declare unlawful. I would not force them into court to resolve a non-dispute.