**Cheryl TIETJENS, Appellant–Petitioner,**

v.

**Ronald TIETJENS, Appellee–Respondent.**

No. 27A05–0008–CV–326.

Court of Appeals of Indiana.

March 27, 2001.

H. Joseph Certain, Joshua M. Howell, Marion, IN, Attorneys for Appellant.

Brian F. McLane, Marion, IN, Attorney for Appellee.

## OPINION

HOFFMAN, Senior Judge

Appellant–Respondent Ronald Tietjens appeals the order enforcing a maintenance provision of a settlement agreement entered into by him and Appellee–Petitioner Cheryl Tietjens, his ex-wife. At issue is whether the trial court erred when it ordered Ronald to pay his former spouse's health insurance premiums and uninsured medical expenses.

We affirm in part, reverse in part, and remand for further proceedings.

The parties' marriage was dissolved in a June 25, 1990, dissolution decree incorporating and merging a written Agreement of Separation and Settlement of Property Rights. Relevant to this appeal is the following paragraph:

As maintenance for [Cheryl], [Ronald] shall maintain health insurance on [Cheryl] and he shall further be responsible for the payment of said health insurance premium for the same period of coverage. [Ronald] shall further pay 100% of the reasonable and necessary medical costs that are not covered by said insurance. [Deletion initialed by both parties]. The terms of this paragraph shall remain in effect until the parties, by mutual consent, shall agree that said maintenance shall be terminated. The terms of this paragraph shall also be subject to the power of the Court granting a dissolution of marriage to amend or terminate its provisions in accordance with Indiana law as it applies to an order of maintenance.

(R. 30).

Sometime thereafter, Cheryl moved to Florida and started a new job. In 1991, she and Ron orally agreed that, because Cheryl had group health insurance through her employer, Ron would not purchase health insurance for her. Apparently, Cheryl left that job, because Ron made insurance payments in 1992. She has intermittently paid her own insurance since February 1993.

On June 26, 1998, Cheryl instituted a contempt proceeding to compel Ronald to reimburse her for the insurance premiums and to pay her uninsured health care expenses. At a subsequent hearing, Cheryl submitted exhibits itemizing those expenses. Without expressly finding Ronald in contempt, the trial court ordered him to pay $4,222.00 "for insurance premiums for insurance he failed to provide," and $5,876.00 "for medical expenses [Cheryl] incurred because of [Ronald's] failure to provide insurance." (R. 67).

Ronald contends that the court erred when it ordered him to reimburse Cheryl for insurance premiums and to pay uninsured medical expenses. He first points out that he was responsible for the payment of health insurance premiums only until the parties agreed that maintenance would be terminated. He then claims that he and Cheryl orally agreed to terminate her maintenance. Cheryl counters that she agreed only to the suspension of Ronald's obligation during periods of intermittent employment and further points out that there was no agreed order terminating maintenance.

Our question is whether the dissolution decree permitted modification by informal agreement. Resolution of that question requires us to consider the nature and effect of the settlement agreement and the court order incorporating that agreement.

In order to promote the amicable settlements of disputes that may arise be-

tween the parties dissolving their marriage, parties may agree in writing to provisions for the maintenance of either party. Ind.Code § 31–15–2–7(a). The relevant statute "gives the parties free rein to make such continuing financial arrangements as, in a spirit of amicability and conciliation, they wish." *Hull v. Hull*, 436 N.E.2d 841, 843 (Ind.Ct.App.1982) (discussing predecessor statute). Thus, divorcing parties are free to anticipate future events and contingencies in maintenance agreements and to declare that alternate terms will "automatically" come into effect upon the occurrence of those events. *Mundon v. Mundon*, 703 N.E.2d 1130, 1136 (Ind.Ct. App.1999). If approved by the court, the terms of the parties' agreement "shall be incorporated and merged into the decree and the parties shall be ordered to perform the terms...." I.C. § 31–15–2–7(b).

Here, the parties did not agree to terminate spousal maintenance automatically upon the occurrence of a specific event, such as remarriage, or after a definite time period. Rather, they agreed that Ronald would pay Cheryl's health insurance premiums until the parties mutually agreed to terminate those payments. No provision addresses how mutual consent was to be manifested.

In the context of child support, our supreme court has determined that parties cannot effectively modify an original child support order by informal agreement. *Nill v. Martin*, 686 N.E.2d 116 (Ind.1997). In *Nill*, the court examined legislative and judicial policies against informal modification and reasoned, "If parties could effect legal modifications of child support through informal means, disputes over amounts and methods and effective dates would certainly multiply." *Id.* at 118. Accordingly, the court held that any alleged agreement between divorced parents to child support payments must be submitted for court approval before given legal effect.

 Child support differs from spousal maintenance in that "the parties to a maintenance agreement are both grown-ups, free to bargain with their own legal rights." *Voigt v. Voigt*, 670 N.E.2d 1271, 1274 (Ind.1996). Nevertheless, as illustrated by this case, an informal oral agreement to modify spousal maintenance is also susceptible to dispute. In addition, the settlement agreement was merged and incorporated into the dissolution decree. Until superseded, a party is required to obey a court order. *See Crowl v. Berryhill*, 678 N.E.2d 828, 830 (Ind.Ct.App.1997) (even erroneous order must be obeyed until reversed on appeal).

We conclude that the order for maintenance was enforceable until modified by the court with the parties' consent. Accordingly, Ronald was responsible for payment of insurance premiums until an agreed order to terminate maintenance payments was approved by the court. The trial court properly ordered Ronald to reimburse Cheryl for insurance premiums she had paid.

 Next, we consider Cheryl's uninsured health care expenses. The charges, dated March 19, 1990, to April 4, 2000, can be divided into two categories: (1) those occurring when Cheryl was not insured, and (2) those occurring when Cheryl was insured.[1] Ronald is liable for expenses incurred when Cheryl had no health care insurance due to Ronald's failure to provide such.

However, the parties both initialed the deletion of the provision requiring Ronald to "pay 100% of the reasonable and necessary medical costs that are not covered by insurance." (R. 30). The trial court approved that deletion in 1990, and the provision is binding on the parties. The court had no authority to modify that provision eight years later. *See Voigt*, 670 N.E.2d at 1277–80 (recognizing the narrowly circumscribed power of the court to impose

---

1. Evidently, Cheryl was insured from February of 1993 to December of 1996, and from March of 1997 to August of 1998.

maintenance on unwilling parties); *Thomas v. Abel*, 688 N.E.2d 197 (Ind.Ct.App. 1997) (following *Voigt*). Accordingly, Ronald is not liable for expenses related to excluded health care services.

Recognizing that the order to pay all uninsured health costs runs contrary to the settlement agreement, Cheryl argues that the award constitutes a proper remedy for Ronald's failure to comply with a prior court order. However, the trial court awarded monetary damages to compensate Cheryl "for medical expenses she incurred because of [Ronald's] failure to provide insurance." (R. 67). There is no evidence that the relevant expenses were incurred because Cheryl rather than Ronald supplied the health insurance.[2] The purpose of the contempt proceeding was to protect Cheryl's right to the agreed upon maintenance. The court erred when it expanded Cheryl's right to maintenance. *See Thompson v. Thompson*, 458 N.E.2d 298, 300 (Ind.Ct.App.1984) (stating that the only proper goal of the civil contempt proceeding was to protect the rights, under the original court order, of those it was meant to benefit).

We affirm the trial court's order holding Ronald responsible for insurance premium payments. We also affirm the trial court's order to the extent that it mandates payment of medical expenses that would have been covered if Ronald would have provided the insurance. We reverse that part of the order requiring Ronald to pay for uninsured medical expenses excluded from insurance coverage. We remand this case for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

RILEY and MATTINGLY, JJ., concur.

2. The maintenance agreement does not describe coverage or deductible requirements of the insurance.