**Karen VAGENAS, a/k/a Karen Loffredi, Appellant–Petitioner,**

v.

**William VAGENAS, Appellee–Respondent.**

**No. 45A03–0704–CV–156.**

Court of Appeals of Indiana.

Jan. 30, 2008.

Rehearing Denied April 24, 2008.

Kathryn D. Schmidt, Burke Costanza & Cuppy LLP, Merrillville, IN, Attorney for Appellant.

Alison L. Benjamin, Nick J. Thiros, Cohen & Thiros, P.C., Merrillville, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Karen (Vagenas) Loffredi's ("Mother") and William Vagenas's ("Father") marriage was dissolved by the Lake Superior Court, and Father was ordered to pay $500 per month in child support for the parties' son. After Father failed to pay child support while paying son's college expenses, Mother filed a Petition for Rule to Show Cause and For Modification of College Expenses. The trial court concluded that Father was not in contempt and ordered the parties to each pay fifty percent of son's college expenses. Mother appeals and raises the following issues, which we restate as:

I. Whether the trial court erred when it determined that Father's payment of college expenses substantially complied with the child support order; and

II. Whether the trial court abused its discretion when it deviated from the Child Support Guidelines and ordered the parties to pay fifty percent of son's college expenses.

We affirm.

### Facts and Procedural History

Mother's and Father's marriage was dissolved in 1998. Father was ordered to pay $500 per month in child support for the parties' son. Father paid this amount until son left Mother's residence to attend college where he is studying to become a priest. At that time, the parties agreed that Father would pay one-half of son's college expenses. Father paid one-half of the expenses as agreed and continued to pay child support to Mother when son returned home for winter and summer breaks.

On January 9, 2006, Mother filed a Petition for Rule to Show Cause and For Modification and College Expenses. In the petition, Mother alleged that Father "wholly failed and refused to pay child support" after their son reached the age of 18. Appellant's App. p. 22. She also requested that the trial court order Father to "participate in the payment of college expenses, including tuition, room, board, and various fees associated with that education." Id. at 23.

A hearing was held on Mother's petition on December 18 and 29, 2006. The evidence presented established that Mother and Father agreed to pay son's college expenses and Father paid fifty percent of son's tuition, room and board and court-ordered child support while son was home during school breaks. The trial court determined that Father paid $9,201.73 in child support and college expenses for the period of August 2004 through December 2005. Id. at 8. The court-ordered child support for that same period would have totaled $8500. Therefore, the court found that Father's payment of college expenses was

> made for the benefit of the child, and Mother accepted the payments as conforming to the child support order. Father shall be given credit for these payments. Based on these payments Father has complied with the court ordered support. Therefore, he cannot be found in contempt of a court order of support. No request was made for overpayment of support and therefore any overpayment constitutes a gift from Father to his son.

Id. at 9. In addition, after considering the parties' incomes and available financial resources, the court concluded that the parties "each can contribute an equal amount toward [son's] college expenses" and ordered each parent to pay fifty percent of

those expenses. *Id.* at 9–10. Finally, the court denied Mother's request for attorney fees. Mother now appeals. Additional facts will be provided as necessary.

## I. Contempt Finding

 Mother argues that the trial court erred when it gave Father credit for non-conforming child support payments, which effectively modified the support order retroactively. In response, Father asserts that because the parties agreed that he would pay one-half of son's college expenses in lieu of child support, he substantially complied with the child support order.

 "Our law regards custodial parents who receive child support funds as trustees who hold the funds for the use and benefit of the child." *Nill v. Martin,* 686 N.E.2d 116, 118 (Ind.1997). "The custodial parent, as a constructive trustee, may not contract away the benefits of the trust." *Id.* Therefore, "a court may not retroactively reduce or eliminate child support obligations after they have accrued." *Whited v. Whited,* 859 N.E.2d 657, 661 (Ind.2007). "[A] parent subject to a support order must make payments in accordance with that order until the court modifies and/or sets aside the order. As a result, informal agreements between parents are generally not effective until a motion for modification is filed." *Id.* (citing *Nill,* 686 N.E.2d at 117–18).

 However, retroactive modification is permitted when "the parties have agreed to and carried out an alternative method of payment which substantially complies with the spirit of the decree[.]"[1]

*Id.* at 662. Parties attempting to show that their alternative payments substantially complied with the spirit of the decree face a rigorous standard. *Id.* "Credit for non-conforming payments is recognized when parents informally agreed to change the form of payment (e.g., payment directly to the parent as opposed to through the clerk's office), so long as the amount of payment can be verified and there is not reduction of amount." *Id.; see also Payson v. Payson,* 442 N.E.2d 1123, 1129 (Ind. Ct.App.1982) (payments made directly to mother and to third parties for rent instead of through the clerk of court substantially complied with spirit of decree).

 To resolve the issue before us, we must first consider whether payment of college expenses equates to payment of child support. Child support orders and educational support orders are separate and distinct. *See Orlich v. Orlich,* 859 N.E.2d 671, 676 (Ind.Ct.App.2006) (citing *Sutton v. Sutton,* 773 N.E.2d 289, 294 (Ind. Ct.App.2002) ("[E]ducational expenses are addressed separately from child support.")). *See also* Ind. Child Supp. Guideline 6, cmt. ("Any extraordinary educational expenses incurred on behalf of a child shall be considered apart from the total basic child support obligation."); *Bales v. Bales,* 801 N.E.2d 196, 199 (Ind.Ct. App.2004), *trans. denied* ("Payment of child support is not the legal equivalent of contributing to a child's college expenses.").

 However, pursuant to Indiana Code section 31–16–6–2(a) (1998 & Supp. 2007), "[t]he child support order . . . may

---

1. The second exception to this rule applies when the "obligated parent takes the child into his or her home, assumes custody, provides necessities, and exercises parental control for such a period of time that a permanent change of custody is exercised." *Whited,* 859 N.E.2d at 662. The issue addressed in *Whited* was whether Father had substantially complied with the child support order when he reduced the amount of child support paid because at various times one or more of his children resided with him for extended periods of time.

also include where appropriate ... amounts for the child's education ... at postsecondary education institutions[.]" Importantly, section 31–16–6–2(b) provides:

> If the court orders support for a child's educational expenses at a postsecondary educational institution under subsection (a), the court shall reduce other child support for that child that: (1) is duplicated by the educational support order; and (2) would otherwise be paid to the custodial parent.

Requiring a trial court to consider full or partial abatement of a parent's basic child support obligation when the parent is also obligated to pay college expenses, "avoids the duplication of payment for a single expense, resulting in a windfall to the custodial parent." *Borth v. Borth*, 806 N.E.2d 866, 871 (Ind.Ct.App.2004).

Consistent with section 31–16–6–2, the commentary to Guideline Six of the Child Support Guidelines states:

> The impact of an award of post-secondary educational expenses is substantial upon the custodial and non-custodial parent and a reduction of the basic child support obligation attributable to the child in question will be required when the child resides on campus or otherwise is not with the custodial parent.

*See also Carter v. Dayhuff*, 829 N.E.2d 560, 566 (Ind.Ct.App.2005) (Where a parent is ordered to pay both child support and a portion of the child's college expenses, the trial court must consider full or partial abatement of the basic child support obligation.); *Hay v. Hay*, 730 N.E.2d 787, 795 (Ind.Ct.App.2000) (The trial court "must consider full or partial abatement of a parent's basic child support obligation where the parent is also obligated to pay a portion of the child's college expenses in addition to child support."). ██ Moreover, "[o]rders requiring the payment of college expenses are modifi-

able because **college expenses are in the nature of child support.**" *Borum v. Owens*, 852 N.E.2d 966, 969 (Ind.Ct.App.2006) (emphasis added). Because both Indiana Code section 31–16–6–2 and the Child Support Guidelines require partial, if not full, abatement of child support obligations where a parent is ordered to pay a portion of the child's college expenses, we conclude that for the purposes of the issue before us, payment of college expenses equates to a payment of child support.

Before the parties' son entered college in August 2004, the parties agreed that Father would pay fifty percent of son's college expenses in lieu of paying child support to Mother. The parties' son did not reside in either parent's home while attending college. Per the parties' agreement, Father paid child support when son resided with Mother during his school breaks. For approximately eighteen months the parties abided by their agreement until Mother filed a Petition for Rule to Show Cause and For Modification and College Expenses.

In his dissent in *Whited*, Justice Boehm stated, "[a]rrangements the parties have worked out between themselves should be honored where their interests, and theirs alone, are at stake.... I would find that the wife is estopped from seeking court relief to adjust a financial arrangement that both parties had lived with, and come to rely upon, for more than a decade." 859 N.E.2d at 665 (J. Boehm, dissenting). Further, in *Whited*, Justice Boehm observed:

> The majority today extends *Nill v. Martin*, 686 N.E.2d 116 (Ind.1997), to apply even where no challenge to the agreed arrangement is raised until long after the last child has been emancipated. As I observed in dissent in *Nill*, I believe the rule the majority invokes requires unneeded resort to the courts. To the

extent possible, rules of law should conform to the expectations of ordinary citizens. Most people would expect this agreed arrangement to be acceptable and consider consulting a lawyer unnecessary. And, as *Nill* itself demonstrated, even if lawyers are involved they may not avoid the trap of assuming an agreed resolution is acceptable and enforceable. Where the interests of the children are concerned, they trump any regard for honoring private arrangements between the parents. But here the only interest is the relative balance sheets of the two former spouses. Imposing a "bright line" rule that any agreed adjustment in support without court approval can be overturned years later seems fundamentally unfair and unnecessary to accomplish the legitimate goal of concern for the children.

*Id.* at 665–66. *See also Nill*, 686 N.E.2d at 120 (J. Boehm, dissenting) ("Rules of law should be structured so far as possible to facilitate the affairs of ordinary citizens without the need for legal advice. Most people believe that a deal is a deal if it is clear, fair, and knowingly reached through arms length bargaining.")

Here, the parties entered into an agreement and abided by that agreement for approximately eighteen months before Mother filed her contempt petition. Father reasonably relied on the parties' agreement in failing to pay court-ordered child support to Mother while he was paying fifty percent of son's college expenses. Importantly, under the parties' agreement Father paid $9,201.73, which is more than the $8500 he was required to pay during that time period under the child support order. Because college expenses are in the nature of child support and there was no reduction in the amount of child support, we conclude that Father's payment of college expenses substantially complied with the child support order.

## II. Future College Expenses

 Mother also asserts that the trial court abused its discretion when it ordered her to pay fifty percent of son's college expenses because the child support order apportioned Mother's obligation at thirty percent and Father's obligation at seventy percent. In support of her argument, Mother notes that where "the trial court determines that an order for college expenses is appropriate, the parents' contributions shall be roughly proportional to their respective incomes." *See Borum v. Owens,* 852 N.E.2d 966, 969 (Ind.Ct.App. 2006). Father responds that deviation from the guidelines is supported by the parties' incomes, their available financial resources, and their previous agreement to be equally responsible for their son's college expenses.

It is well established that the Child Support Guidelines "are not immutable, black letter law." Ind. Child Support Guideline 1, cmt. However, if the trial court "believes that in a particular case application of the Guideline amount would be unreasonable, unjust, or inappropriate, a finding must be made that sets forth the reason for deviating from the Guideline amount." *Id.*

Indiana Code section 31–16–6–2(a) provides that an educational support order may include:

(1) amounts for the child's education in elementary and secondary schools and at postsecondary educational institutions, taking into account:

(A) the child's aptitude and ability;

(B) the child's reasonable ability to contribute to educational expenses through:

(i) work;

(ii) obtaining loans; and

(iii) obtaining other sources of financial aid reasonably available to the child and each parent; and

(C) **the ability of each parent to meet these expenses;**

(2) special medical, hospital, or dental expenses necessary to serve the best interests of the child; and

(3) fees mandated under Title IV–D of the federal Social Security Act (42 U.S.C. 651 through 669).

Ind.Code § 31–16–6–2(a) (1998 & Supp. 2007) (emphasis added).

It its discussion of concerning the apportionment of college expenses, the Child Support Guidelines state:

It is discretionary with the court to award post-secondary educational expenses and in what amount. In making such a decision, the court should consider postsecondary education to be a group effort, and weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense. If the Court determines that an award of post-secondary educational expenses is appropriate, it should apportion the expenses between the parents and the child, taking into consideration the incomes **and overall financial condition of the parents** and the child, education gifts, education trust funds, and any other education savings program.

Ind. Child Support Guideline 6, cmt. (emphasis added).

The trial court entered the following findings to justify its deviation from the 70/30 split established by the Guidelines:

As and for college expenses it is undisputed that the petition was timely filed, and that [son] has the aptitude for post secondary education. Further, consid-

ering the parties' respective incomes and the financial resources available to them each can contribute an equal amount toward [son's] college expenses. The Court has also considered [son's] ability to contribute to his expenses. In light of the studies he has chosen, and the grants and contributions made on his behalf, no further contribution shall be required of [son].

Therefore, the Petition for Contribution to College Expenses is GRANTED. Each parent is ordered to pay 50% of the college expenses for [son's] undergraduate education. This is a deviation from the percentage share of the total weekly gross incomes reflected on the Child Support Worksheet and was predicated on the parties['] ability to pay, the financial resources available to them, and the past practices of the parties.

Appellant's App. pp. 9–10.

Father's income is approximately $80,000 per year. The trial court imputed income to Mother because her new business is not currently making a profit.[2] The evidence presented at the hearing established that Mother has significant financial resources available to her given her investment accounts and the fact that she resides in a multi-million dollar home. Appellee's App. pp. 94–95. Mother previously agreed to pay fifty percent of son's college expenses and had the financial resources available to her to do so. For all of these reasons, we conclude that the trial court did not abuse its discretion when it ordered the parties to each pay fifty percent of son's college expenses.

### Conclusion

Father substantially complied with the child support order when he paid son's college expenses and paid child support

---

**2.** However, Mother testified she is hopeful that her new business will start making a profit in the near future because she now has

contracts with Merrill Lynch, UBS, and LPL. Tr. p. 50.

during son's school breaks. In addition, the trial court did not abuse its discretion when it ordered the parties to each pay fifty percent of son's college expenses.

Affirmed.[3]

NAJAM, J., and BRADFORD, J., concur.

---

**3.** Without argument or citation to any author- ity, Mother requests that we remand this case to the trial court for a determination of appel- late attorney fees. Consequently, her request for appellate attorney fees is waived. Ind. Appellate Rule 46(A)(8)(a) (2008).