Lisbeth Jane THACKER, Appellant–
Petitioner,

v.

Michael D. THACKER, Appellee–
Respondent.

No. 49A02–9810–CV–798.

Court of Appeals of Indiana.

June 11, 1999.

Denise F. Hayden, Indianapolis, Indiana, Attorney for Appellant.

Michael J. Donahoe, Epstein & Frisch, Indianapolis, Indiana, Attorney for Appellant.

**OPINION**

RILEY, Judge

*STATEMENT OF THE CASE*

Petitioner–Appellant Lisbeth Jane Thacker (hereinafter "Mother") appeals the trial

court's order modifying child support and ordering the payment of education expenses.

We affirm in part, and reverse and remand in part.

### ISSUES

Mother presents three issues for our review which we consolidate and restate as:

    1. Whether the trial court erred in modifying child support and finding no support arrearage.

    2. Whether the trial court erred by ordering her to pay a portion of her daughter's post-secondary education expenses.

### FACTS AND PROCEDURAL HISTORY

The parties were divorced on March 5, 1990. In 1998, Michael Thacker (hereinafter "Father") filed a contempt citation, petition for emancipation for child support only, and petition for allocation of college expenses. In turn, Mother filed a petition for rule to show cause. The trial court entered its order following a hearing on these matters. This appeal ensued.

### DISCUSSION AND DECISION
#### I.  Child Support
##### A.  Modification

■■■ Decisions regarding child support generally are left to the sound discretion of the trial court. *Beehler v. Beehler*, 693 N.E.2d 638, 640 (Ind.Ct.App.1998). Absent an abuse of discretion or a determination that is contrary to law, we will not disturb a trial court's order modifying child support. *Id.*

##### 1.  During Son's Absence

Mother contends that the trial court erred by modifying the amount of child support to be paid by Father during the period of time their son was not living in her home.

■■■ It is a long-standing rule in Indiana that a non-custodial parent may not unilaterally reduce an in gross support order but must make payments in the manner, amount, and at the times required by the current support order until that order is modified. *Nill v. Martin*, 686 N.E.2d 116, 117 (Ind.

1997). Moreover, any alleged agreements between divorced parents to child support payments different than those ordered by the court must be submitted for court approval before they can be given legal effect. *Id.* at 116.

■■■ In the present case, the decree of dissolution granted Mother custody of the parties' two minor children and ordered Father to pay $135 per week for their support. Prior to the modification at issue, the amount of child support had not been modified by court order. However, for a period of approximately two years from August 22, 1991 through June 8, 1993, the parties' son did not live with Mother or Father. During that time, Father reduced the amount of support to $100 per week. The son later returned to live in Mother's home, and Father increased the support payments to $135 per week at that time. Father alleges, and the trial court found, that an agreement existed between Mother and Father whereby child support for their son would be suspended during this two-year period and that $100 was a reasonable amount of support for the minor child still residing with Mother during this time.

The trial court erred in sanctioning Father's unilateral reduction of support payments and giving legal force and effect to the alleged agreement between Mother and Father for such a reduction. Father argues that his payments came under an exception to the long-standing rule noted above. He claims that because the parties agreed to and carried out an alternative method of payment that substantially complied with the spirit of the decree, he should receive credit for having made support payments in full during his son's absence from Mother's home. However, Father confuses the *method* of payment with the *amount* of payment. An alternative method of payment, for example, occurs when the obligated parent makes payments directly to the custodial parent rather than through the clerk of the court. By contrast, an informal arrangement to reduce the actual amount of support below the court ordered amount, as occurred here, is not an alternative method of payment but an alternative amount of payment. *See Nill*, 686 N.E.2d at

118 (holding that informal arrangement to reduce amount of support below the court ordered amount was not an alternative method of payment and did not substantially comply with the spirit of decree).

■ In addition, a court can only modify a child support order prospectively. A court order modifying a support obligation may only relate back to the date the petition to modify was filed and not an earlier date. *Beehler,* 693 N.E.2d at 641. Here, in 1998 the court attempted to modify the support due from August, 1991 to June, 1993. This is an improper retroactive modification of support. Furthermore, there was not a petition for modification before the court. Thus, we must reverse the support modification ordered by the trial court during the period of the son's absence from Mother's home.

### 2. Support for Daughter

■ Mother briefly argues that the trial court erred in vacating child support for the parties' daughter as of September 1, 1997. She alleges that the court may only vacate child support as of the date of Father's "petition for emancipation for child support only."

■ We agree. As Father correctly notes, emancipation is deemed effective as of the date of emancipation, rather than the date of filing of the petition. *Beckler v. Hart,* 660 N.E.2d 1387, 1389 (Ind.Ct.App. 1996). However, the trial court did not emancipate the parties' daughter, and Father concedes this in his brief. Appellee's Brief at 8. It appears that the trial court did not emancipate the daughter because, although she is exercising some independence, she is not supporting herself free from any control and care of her parents. *See Young v. Young,* 654 N.E.2d 880, 883 (Ind.Ct.App. 1995) (asserting that emancipation occurs when child places herself beyond control, custody and care of parents and in making that determination court must inquire into whether child is supporting herself without assistance of her parents).

The record reveals that Father gives his daughter at least fifty dollars per week and that he plans to continue to do so, and Mother continues to attempt reconciliation with her daughter such that her daughter would return to live in her home. Here, the court merely vacated child support payments because the daughter is no longer residing with Mother and Mother does not provide any support for the daughter. As we stated previously, a court order modifying a support obligation may only relate back to the date the petition to modify was filed and not an earlier date. *Beehler,* 693 N.E.2d at 641. Thus, we reverse and remand to the trial court with instructions that child support may only be vacated as of the date of Father's petition, February 20, 1998.

### B. Arrearage

Mother further claims that the trial court erred in finding no support arrearage. Particularly, she alleges that the trial court's calculation of support arrearage was based upon its improper modification of support.

■ We agree. In calculating the support arrearage, the court based its calculation upon an approximately two-year period where support was $100 per week during the time the son was absent from Mother's home. Because we conclude that the trial court improperly modified the amount of child support to $100 per week during this two-year period, we must also conclude that the trial court incorrectly calculated the support arrearage. Therefore, we must reverse and remand to the trial court with instructions to calculate the amount of support arrearage.

However, we note that the record reveals that other than allowing him to do some laundry at her home and serving him an occasional meal, Mother did not support the son during his two-year absence from her home. Based upon this information, we cannot reasonably order Father to pay Mother money for support of the son when Mother did not in fact support the son during this period of time. Although the current posture of Indiana law would require Father (the non-custodial parent) to pay the arrearage to Mother (the custodial parent), *see Moody v. Moody,* 565 N.E.2d 388, 391 (Ind. Ct.App.1991) (stating that only the person who has present custodial responsibility can be the trustee of the non-custodial parent's obligation to pay), in this unusual situation

this would amount to a windfall to Mother for expenses she did not actually incur. In fact, in *Moody* this Court went on to state that "[o]ne who has had the obligation to care for a child and has advanced his own funds to do so is entitled to collect the arrears from the non-custodian." *Id.* at 391–92. Therefore, in the present case, the son is the person entitled to collect the arrears from Father because the son advanced his own funds to care for himself during this two-year period.

Thus, we remand this issue to the trial court for calculation of support to be paid by Father *directly to the son* who supported himself during this two-year period. The trial court should base its calculation on the number of actual weeks the son was absent from Mother's home and support in the amount of $35 per week (i.e., the amount by which Father reduced the in gross amount of court-ordered support during the son's absence from Mother's home) with no interest calculation. The trial court should then enter an order directing Father to pay this sum certain directly to the son as a third party beneficiary of the parents' decree of dissolution and accompanying support order.

■ In addition, the record reveals that Father discontinued his support payments on behalf of the daughter in early 1998, prior to the time he filed his petition on February 20, 1998. As we determined in Issue I., section 2, above, Father was obligated to pay support for the parties' daughter until the date of filing his petition on February 20, 1998. Therefore, there exists an arrearage of $135 per week for the time between the cessation of payments by Father (sometime in early 1998) and the date of filing Father's petition (February 20, 1998). Father is responsible for the full amount of $135 because, as we have discussed above, this support amount was an in gross amount that had not been modified by court order even though the parties' son had reached the age of twenty-one, and was thus emancipated, on February 12, 1994. As we stated previously, the daughter of the parties has refused to reside with Mother since September, 1997. Therefore, for the same reasons that we previously rendered with regard to the son, we conclude

this arrearage should be paid directly to the daughter.

Thus, we remand this issue to the trial court for a hearing and/or submissions by the parties to determine the date on which Father discontinued support payments and for calculation of the amount of support to be paid by Father *directly to the daughter* who was residing independently of either parent during this period. The trial court should base its calculation on the number of actual weeks between the time Father discontinued support payments and February 20, 1998, and should multiply that number by $135 per week with no interest calculation. The trial court should then enter an order directing Father to pay this sum certain directly to the daughter as a third party beneficiary of the parents' decree of dissolution and accompanying support order.

## II. *Education Expenses*

■ Upon review of a trial court's order of college expenses, we reverse only if the trial court's decision is clearly erroneous. *In Re the Marriage of Pulley,* 652 N.E.2d 528, 531 (Ind.Ct.App.1995).

Mother alleges that the trial court erred by ordering her to pay a portion of her daughter's post-secondary education expenses. Specifically, she claims that an education expenses order must be based upon a general child support order and because the court vacated child support for her daughter, there is no basis for an order for college expenses.

■ Ind.Code § 31–16–6–2 states, in pertinent part:

(a) The child support order *or* an educational support order may also include, where appropriate:

(1) amounts for the child's education . . . at institutions of higher learning. . . .

(emphasis added). Thus, by using the disjunctive term "or," the statute providing for child support also contemplates a separate and distinct order for educational support. Moreover, Ind.Code § 31–16–6–2(b) states that if the court orders support for a child's education at an institution of higher learning, the court shall reduce other child support of that child that is duplicated by the education-

al support order. Therefore, the court may, as it did here, abate the child support order and institute an education expenses order while a child attends college.

■ Additionally, Mother contends that because the parties' daughter has repudiated a relationship with her, she should not be ordered to contribute to her daughter's college expenses. Mother cites *McKay v. McKay*, 644 N.E.2d 164 (Ind.Ct.App.1994) in support of her argument.

First, we note that in *McKay* this Court adopted the decision of a Pennsylvania court in dealing with a twenty-year old college student and his relationship with his father. Both courts were careful to limit their decisions to adult children (i.e., those over eighteen years of age). In the present case, the parties' daughter was only seventeen at the time of the hearing.

■ Second, the record does not reveal, and the trial court did not find, that Mother's relationship with the parties' daughter had deteriorated to such a point that reconciliation was impossible. Unlike the situation in *McKay*, where the son testified that he had no interest in a relationship with his father even after his father had sought the court's assistance to further their reconciliation, in the present case there is no evidence in the record of the daughter's wishes as to her relationship with her mother. Mother testified that the parties' daughter did not want to live with Mother because of her strict rules. Additionally, Mother testified that their contact consists of brief phone conversations and that she had seen her daughter on Christmas day and just a month prior to the hearing. Although parents are under no absolute legal duty to provide a college education for their children, a court may nevertheless order them to pay all or part of such costs when appropriate. *Skalon v. Skalon–Gayer*, 695 N.E.2d 953, 956 (Ind.Ct.App. 1997). Thus, we conclude that the discord between Mother and daughter does not amount to the repudiation described in *McKay* and that the trial court properly entered an order for Mother to contribute to daughter's college expenses.

## CONCLUSION

Based upon the foregoing, we conclude that the trial court erred in modifying the child support order and in vacating child support for the parties' daughter prior to the date of Father's petition. In addition, the trial court erred in finding no support arrearage. Finally, the trial court properly ordered Mother to pay a portion of daughter's college expenses.

Affirmed in part, and reversed and remanded in part with instructions.

MATTINGLY, J., concurs.

SULLIVAN, J., concurring in part and dissenting in part with separate opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

I agree with the majority opinion insofar as it holds that a support order in gross for two or more children may not be modified by the mere fact of emancipation of one of the children. Such a modification must be obtained by petition and court order. Therefore, I concur in that portion of the majority opinion which binds Father to the $135 support ordered at the outset and which holds that he erroneously reduced his support payments to $100 when the son left the custodial home from August 22, 1991 through June 8, 1993, during which period he was the sole provider of his own support.[1]

However, by way of clarification, I do not agree with the majority's blanket statement that a support modification may never be made effective earlier than the date of the filing of a modification petition. See op. at 944–45. The statement is inaccurate insofar as it purports to deny a retroactive modification when an only child or all children have become emancipated.

---

1. That the son may have returned to his mother's home before reaching age 21 and that he may have been partially or fully dependent upon his mother and/or father for support, does not in fact or law invalidate a determination that during a prior period he was emancipated. *Corbridge v. Corbridge* (1952) 230 Ind. 201, 208, 102 N.E.2d 764. (following emancipation, "if the child becomes unable to support itself (sic), the father's duty revives").

The son was an adult child, i.e. over the age of 18, when he left home and was on his own from August 22, 1991 through June 8, 1993. He was truly emancipated during this period. If he had been the only child of the marriage, Father's assertion of emancipation would have merit. In *Donegan v. Donegan* (1992) Ind., 605 N.E.2d 132, our Supreme Court held that unlike a modification sought for changed circumstances, an assertion of emancipation is deemed effective as of the date of emancipation rather than as of the date of the filing of the petition for modification.

Here, it is only because during the period in question the daughter was not emancipated and the amount of support due was in gross that Husband's claim for retroactive modification from 1991 to 1993 must be rejected. *Kirchoff v. Kirchoff* (1993) Ind.App., 619 N.E.2d 592; *Ross v. Ross* (1979) Ind. App., 397 N.E.2d 1066.

With respect to the daughter, however, I respectfully dissent. The trial court specifically found that the daughter, "age 17, left the residence of her mother on September 1, 1997 and since that date has been living on her own and under her own dominion." Record at 35. I am unable to read this finding of fact as anything other than a statement that as of that date, the daughter became emancipated. In furtherance of that finding, the court "vacated" the child support order as of that date. Record at 35. I can conceive of no basis why the trial court could relieve Father of his support obligation unless the court found daughter to be emancipated.

The holdings of the majority in this respect seem to be inconsistent. On the one hand, my colleagues hold that daughter was not emancipated during the time she was not living in her mother's home. However, by ordering Father to pay directly to daughter, amounts representing his support obligation, our opinion seems to be stating that she is entitled to such sums because, like the son, she was her own sole support.

I would affirm the trial court's termination of all support, with the exception of college expenses, effective September 1, 1997.

I concur with respect to the trial court's order concerning payment of daughter's college expenses.

Furthermore, I heartily endorse and concur in the holding that the arrearage owed for such period should be paid directly to the son and not to Mother.