**Jerry D. OGLE, Appellant,**

v.

**Margaret C. OGLE, Appellee.**

**No. 34A02–0109–CV–634.**

Court of Appeals of Indiana.

June 10, 2002.

---

Thomas J. Hilligoss, Russell, McIntyre, Hilligoss & Welke, Kokomo, IN, Attorney for Appellant.

Russell T. Clarke, Jr., Emswiller, Williams, Noland & Clarke, Indianapolis, IN, Katherine J. Noel, Noel & Noel, Kokomo, IN, Attorneys for Appellee.

**OPINION**

SULLIVAN, Judge.

Appellant, Jerry Ogle, appeals the trial court's judgment finding him delinquent in the payment of previously ordered child support in the sum of $43,960.00. Jerry claims that the trial court erred in finding that, pursuant to a property settlement agreement, he was obligated to pay non-educational child support upon the parties' youngest child attending an institution of higher learning.

We affirm.

On May 22, 1987, the trial court issued an order dissolving Jerry and Margaret Ogle's marriage and adopting the parties' Property Settlement Agreement ("Settlement Agreement"). Pursuant to the Settlement Agreement, Margaret received custody of their two children, Nicholas, then twelve, and Stephanie, then eight, and Jerry agreed to pay $231.00 per week ($115.50 per child) in child support. The Settlement Agreement further provided:

"When either of the minor children are able and elect to attend a college, trade school or other post-secondary educational institution, [Jerry] shall pay the room, board, books, tuition and fees incidental to such education together with such support as the court may from time to time deem proper." Appellant's Appendix at 8.

On February 15, 1990, Margaret filed a petition to modify child support. On April 30, 1990, Jerry and Margaret agreed that Jerry's child support would be increased to $280.00 per week, and the trial court approved this modification.[1]

Thereafter, Jerry made regular support payments of $280.00 until August 24, 1996, which was Stephanie's eighteenth birthday and the day after she went to Asbury College in Kentucky. Stephanie attended Asbury College for one year, and then attended Anderson University in Anderson, Indiana for three years until she received her degree. While Stephanie attended college, Jerry paid all of Stephanie's expenses pursuant to the Settlement Agreement, including room, board, books, tuition, and other incidental costs associated therewith. Jerry, however, did not make any non-educational child support payments, i.e. $280.00 per week. At no point after the 1990 modification did Jerry or Margaret attempt to further modify the prior child support order of $280.00 per week.[2]

On February 15, 2001, Margaret filed a verified motion to show cause alleging Jerry's failure to pay non-educational child support from August 24, 1996 through Au-

---

1. Jerry and Margaret agree that the arrangement to increase Jerry's child support obligation to $280.00 per week modified the then existing support order under the Settlement Agreement to an in gross support order. An in gross support order is an order for the obligated party to pay a specified sum of undivided support for more than one child. *Isler v. Isler,* 422 N.E.2d 416, 419 (Ind.Ct.App. 1981).

2. We note that Margaret failed to assert her rights until nearly four and one-half years after Jerry stopped paying non-educational child support. Margaret's unwarranted delay has resulted in a substantial judgment against Jerry. Although we do not condone this delay, Jerry failed to present any issue in this regard.

gust 24, 1999, and seeking to establish a delinquency.[3] On July 12, 2001, Margaret moved to dismiss her verified motion to show cause and filed a motion to reduce support delinquency to judgment. The trial court held a hearing on August 27, 2001. The day after the hearing, the trial court issued an order finding Jerry delinquent in the payment of previously ordered child support in the sum of $43,960.00, or $280.00 per week for the three-year period.

Upon appeal, Jerry argues that the Settlement Agreement did not obligate him to pay non-educational child support when the youngest child, Stephanie, attended an institution of higher learning. In the alternative, Jerry argues that if we conclude that he was obligated to pay such non-educational child support in addition to Stephanie's college expenses, at the very least, he should receive a credit against the arrearage for the time Stephanie was away at school.

▆▆▆▆ We begin by noting that upon dissolution of marriage, parties are free to draft their own settlement agreements. *Niccum v. Niccum*, 734 N.E.2d 637, 639 (Ind.Ct.App.2000). Such agreements are contractual in nature and become binding upon the parties once the trial court merges and incorporates such into the divorce decree. *In re Marriage of Loeb*, 614 N.E.2d 954, 957 (Ind.Ct.App.1993). This court will enforce an agreement concerning the custody and support of children even though the divorce court would otherwise not have the authority to do as the parties agreed. *Id.; see also Schueneman v. Schueneman*, 591 N.E.2d 603 (Ind.Ct. App.1992) (holding that although a parent's general duty to support his or her

child ends when the child reaches twenty-one years of age, parents are free to enter into binding agreements to do so). When interpreting such agreements, we apply the general rules applicable to construction of contracts. *Niccum*, 734 N.E.2d at 639.

▆▆▆▆ The interpretation and construction of contract provisions is a function for the courts. *Id.* Upon appeal, we employ the same standard of review as applied by the trial court, that is, unless the terms of the contract are ambiguous, they will be given their plain and ordinary meaning. *Id.* Where the terms of a contract are clear and unambiguous, the terms are conclusive, and we will not construe the contract or look to extrinsic evidence, but will merely apply the contractual provisions. *Id.* The terms of a contract are not ambiguous merely because the parties disagree as to the proper interpretation of the terms. *Id.*

In their respective briefs, Jerry and Margaret assert that the terms of their Settlement Agreement are unambiguous, but they disagree as to the proper interpretation of the terms regarding child support. Jerry and Margaret both direct us to the language of the Settlement Agreement. Jerry asserts that the terms of the Settlement Agreement clearly indicate that he and Margaret provided for two separate and distinct support scenarios— child support until the time "the minor children are able and elect to attend a college ...," and child support in the form of educational expenses associated with college when, and if, the minor child so decides.

Jerry argues that the language of the Settlement Agreement should be inter-

---

**3.** Margaret concedes that when Stephanie turned 21 on August 24, 1999, the in gross child support order terminated. Thus, we are concerned only with the three-year period from August 24, 1996, when Jerry stopped paying the non-educational child support, through August 24, 1999, when Stephanie turned 21.

preted to mean that *"when"* Stephanie went off to college, he was obligated to pay only the expenses associated with such higher education "together with such support *as the court may from time to time* deem proper." Jerry focuses on the emphasized portions and argues that because the language is "permissive," it clearly indicates that the child support obligation of $280.00 per week terminated once Stephanie went to college, and that he was not obligated to pay non-educational child support unless a subsequent support order was entered.

Our review of that portion of the Settlement Agreement indicates that the provision concerning child support is clear and unambiguous. However, we do not accept Jerry's interpretation as to how it should be construed. The Settlement Agreement does not provide that Jerry's non-educational child support obligation terminated when Stephanie went to college. Giving the terms their plain and ordinary meaning, it is apparent that Jerry was obligated to pay non-educational child support in addition to college expenses "[w]hen either of the minor children [were] able and elect[ed] to attend a college." The language "together with such support as *the court may from time to time* deem proper" is appropriately construed, not as suggested by Jerry, but as permitting the court to further modify the then current amount of non-educational support if such was later determined to be inappropriate given the circumstances. We therefore conclude that pursuant to the Settlement Agreement, Jerry was obligated to pay non-educational support in the amount of $280.00 per week from August 24, 1996 through August 24, 1999.

Given that we have concluded that Jerry was obligated to pay non-educational child support in addition to college expenses, we now address Jerry's argument

that he is entitled to a credit against his arrearage for the time Stephanie was away at college and he provided support by paying all of her college expenses. Specifically, Jerry asserts that it would amount to a windfall to pay Margaret the arrearage for expenses she did not incur.

It is a long-standing rule that the non-custodial parent may not unilaterally reduce a child support obligation but must make payments in the manner, amount, and at the times required by an in gross support order until a court orders a modification or all of the children are emancipated or reach the age of twenty-one years. *Thacker v. Thacker,* 710 N.E.2d 942, 944 (Ind.Ct.App.1999); *Nill v. Martin,* 686 N.E.2d 116, 117 (Ind.1997); *Kirchoff v. Kirchoff,* 619 N.E.2d 592, 596 (Ind.Ct.App.1993). An extension of this rule is that any modification of a support obligation may relate back, at the earliest, to the date a petition to modify was filed. *Beehler v. Beehler,* 693 N.E.2d 638, 641 (Ind.Ct.App.1998). Indeed, a court is without power to retroactively modify an obligor's duty to pay a delinquent child support obligation. Ind.Code § 31–16–16–6 (Burns Code Ed. Repl.1997); *Beehler,* 693 N.E.2d at 640. "[O]nce funds have accrued to a child's benefit under a court order, the court may not annul them in a subsequent proceeding." *Martin,* 686 N.E.2d at 118.

Here, Jerry's argument is essentially a request for us to disregard the Settlement Agreement and retroactively modify his child support obligation. Jerry and Margaret executed a Settlement Agreement wherein they agreed upon the terms of child custody and child support, including a provision which required Jerry to pay college expenses in addition to non-educational child support. Jerry and Margaret subsequently modified the amount of non-educational child support, and it is this

in gross support order which remained in effect until the court ordered a modification or Stephanie turned twenty-one. At no time, however, did either Jerry or Margaret petition to modify or terminate the then existing child support order. Thus, Jerry was obligated to pay Stephanie's college expenses and make the support payments in the manner, amount, and at the times required by the Settlement Agreement, and as modified by the subsequent agreement. By failing to pay the non-educational support while Stephanie was at college, Jerry unilaterally reduced his support obligation, which he is not permitted to do.

Jerry nonetheless argues that because payment of the entire amount of the arrearage would amount to a windfall to Margaret, he is entitled to a credit against his accrued support obligation. However, we find nothing in the cases to which Jerry refers which supports the position that a seeming windfall to the custodial parent permits a court to retroactively modify an accrued support obligation.

In *Thacker*, the court held that the non-custodial parent should be ordered to pay, directly to the son, an arrearage, which accumulated during the period when the son was absent from the custodial parent's home. 710 N.E.2d at 946. The court reasoned that it could not reasonably order the non-custodial parent to pay the custodial parent money for support of the son, when the custodial parent did not in fact support him. *Id.* at 945. The court concluded that under the circumstances, such would amount to a windfall for the custodial parent for expenses she did not actually incur. *Id.* at 945–46. The court did not, however, retroactively modify or in any way reduce the child support arrearage because of the windfall which would have resulted to the custodial parent.

In *Martin*, the court cited three narrow situations in which credit against accrued support obligations is permitted. Jerry asserts that the third exception, which permits a credit in situations where a permanent change of custody has in effect occurred, follows the policy that a custodial parent should not receive child support for periods of time during which the custodial parent is not supporting the child because to do so would result in a windfall to the custodial parent. To some extent this is true. However, this exception is not applicable to the case before us. Here, while Stephanie was away at college, she was still under the care and supervision of Margaret as the custodial parent. Indeed, during vacations and summer break, except for a two week period when she traveled to England, Stephanie resided with her mother. We cannot say that simply because Jerry paid all of Stephanie's expenses while she was away at college that such, in effect, amounts to a permanent change in custody.

Competing with the notion that a custodial parent should not receive a windfall is the freedom of contract. As noted above, once a court incorporates a settlement agreement devised by the parties into a divorce decree, the terms of that agreement are binding. *Loeb*, 614 N.E.2d at 957. As noted, Jerry and Margaret agreed to the terms of the Settlement Agreement, including the provision which required Jerry to pay all college expenses in addition to non-educational child support. While this may seem to result in a windfall for Margaret, Jerry is bound by the terms of the Settlement Agreement.

We do recognize, however, that pursuant to the Settlement Agreement, Jerry may have been entitled to a partial or full abatement of his non-educational child support obligation for the time Stephanie was at college had he petitioned the court

for a modification when Stephanie went off to school. The Settlement Agreement contemplated that very thing in that it provided that Jerry would pay for college expenses "together with such support as the court may from time to time deem proper." As we noted, this provision is appropriately interpreted as permitting the court to modify the non-educational support order as circumstances demanded.

While Jerry's actions of paying all of Stephanie's college expenses are commendable, such does not excuse his failure to pay non-educational child support in accordance with the Settlement Agreement. Further, Jerry's request for a credit against any arrearage is simply a request for retroactive modification of his support obligation, which we are not permitted to do. Therefore, we conclude that the trial court did not err in finding Jerry to be delinquent in the payment of child support in the sum of $43,960.00.

The judgment of the trial court is affirmed.

DARDEN, J., concurs.

BAKER, J., dissents with separate opinion.

BAKER, Judge, dissenting.

I respectfully dissent from the majority's determination that the settlement agreement between the parties obliged Jerry to pay non-educational child support to their youngest child, Stephanie, upon her attendance at an institution of higher learning. In my view, the terms of the agreement are unambiguous and should be interpreted to mean that when Stephanie went to college, Jerry became obliged to pay her education expenses, including room, board, tuition, books, and other incidental fees, but was not required to pay non-educational support unless a subsequent support order was entered. Further, in the event that any ambiguity does exist in the terms of the agreement, I believe that equity compels that it should be construed against Margaret to prevent a severe injustice.

As the majority observed, it is a long-standing rule that the non-custodial parent must make payments in the manner, amount, and at the times required by an in gross support order until a court orders modification or all of the children are emancipated or have reached the age of twenty-one. *Thacker v. Thacker,* 710 N.E.2d 942, 944 (Ind.Ct.App.1999). This means that any modification of child support is legally invalid unless and until it is approved by the trial court. A corollary of this rule is that a trial court may not modify support awards retroactively, and modification of a support obligation may relate back, at the earliest, to the date a petition to modify was filed. *Beehler v. Beehler,* 693 N.E.2d 638, 641 (Ind.Ct.App. 1998); *see also* Ind.Code § 31–16–16–6 (providing that a court may not retroactively modify an obligor's duty to pay a delinquent child support obligation).

One basis for modification of a support order is when the non-custodial parent assumes extraordinary education expenses in addition to the basic child support obligation. According to Ind. Child Support Guideline 3(E), any extraordinary education expense incurred on behalf of children may be added to the basic child support obligation. The commentary to this guideline provides that, if college expenses are provided separate from child support, support paid to the custodial parent should be reduced, at least while the student is away from the household and at school. *See* Child Supp. G. 6, cmt. ("Extraordinary Educational Expenses"). In keeping with this guideline, we have held that when a parent is obligated to pay a portion of a child's college expenses in addition to child

support, the trial court must consider full or partial abatement of a parent's basic child support obligation. *In re Marriage of Tearman*, 617 N.E.2d 974, 977 (Ind.Ct. App.1993). This avoids the duplication of payment for a single expense, resulting in a windfall to the custodial parent. *Id.*

In this instance, the majority concluded that in addition to the educational support that Jerry had already paid, he was also responsible for non-educational support arrearage in the amount of $43,900. Op. at 648. Notwithstanding Child Supp. G. 3(E) and the supporting commentary, the majority determined that Jerry was not entitled to any abatement of his non-educational child support. This is because he failed to file a petition for modification while Stephanie was still in college, and, therefore, any abatement would amount to an impermissible retroactive modification of his support obligation. Op. at 649–650.[4]

I must respectfully disagree with the majority's interpretation of the child support provision and construe it to provide that Jerry was not obligated to pay non-educational child support after Stephanie began college unless a subsequent support order was entered. The settlement agreement provides in relevant part:

> The parties agree ... that custody be awarded to [Margaret], and [Jerry] be ordered to pay the sum of $231.00 per week for their [children's] support, being $115.50 per week, per child.... When either of the minor children are able and elect to attend a college, trade school or other post-secondary educational institution, [Jerry] shall pay the room, board, books, tuition and fees incidental to such education together with such support as

the court may from time to time deem proper.

Appellant's App. p. 8. The dispute between the parties centers on the meaning of the clause "together with such support as the court may from time to time deem proper." Appellant's App. p. 8; Appellant's Br. p. 7–8; Appellee's Br. p. 6–9.

The majority construes this language "as permitting the court to further modify the then current amount of non-educational support" if such modification becomes appropriate. Op. at 648. Had this clause stated that Jerry was to pay the specified educational expenses "together with such support as the court *has* deemed proper," I would be inclined to accept the majority's interpretation. However, the language employed is permissive and focuses on future, not past, support orders by the trial court. Therefore, I interpret it as referring to future support orders that may be issued by the court upon application by one of the parties, not the continued payment of the existing non-educational support payment. Accordingly, I believe that Jerry acted according to the terms of the settlement agreement when, upon Stephanie's attendance at college, he began paying the specified educational expenses but ceased paying non-educational support. Thus, his action did not constitute an impermissible unilateral reduction in child support.

I also believe that Margaret's actions support Jerry's interpretation of the settlement agreement or, at the very least, dictate that any ambiguity in the contract should be construed against her. For four and one-half years Margaret never indicated that she interpreted the agreement to require both educational and non-educational support or that she considered

---

**4.** The majority also determined, and I agree, that none of the narrow exceptions to the rule against retroactive modification of child support are applicable to this case. *See* op. at 649.

Jerry in violation thereof. Appellant's App. p. 16, 19. Instead, she remained silent, permitting Jerry to unwittingly accumulate thousands of dollars in non-educational support arrearage, while at the same time faithfully outlaying large amounts of money for Stephanie's food, shelter, tuition, medical, and other financial needs while she was in college.[5] Had Margaret made Jerry aware of her alternate interpretation of their agreement he could have sought a modification of the custody order and requested an appropriate credit on his non-educational child support obligation. *See* Child Supp. G. 3(E). Instead, Margaret waited until one and one-half years after Stephanie turned twenty-one to file her verified motion to show cause, by which time Jerry was precluded from receiving any credit by the rule barring retroactive modification of child support.

In my view, Jerry should not be faulted or penalized for failing to take action to resolve an ambiguity that he was not aware existed. *See Moss v. Frazer,* 614 N.E.2d 969, 971–72 (Ind.Ct.App.1993) (stating that "we cannot fault [the father] for not raising an ambiguity in the 1979 decree until he was made aware of [the mother's] alternate interpretation when she filed her contempt petition"). Nor should Margaret be allowed to receive a windfall as a result of such prejudicial and unscrupulous "gotcha" litigation tactics. *See Wilson Fertilizer & Grain, Inc. v. ADM Mill. Co.,* 654 N.E.2d 848, 856 (Ind. Ct.App.1995). (Kirsch, J., concurring and dissenting) (disagreeing with the majority's application of the law to the facts enabling appellee-defendant to play and win "the latest version of 'Legal Gotcha' " and receive goods that it had ordered without paying for them) *trans. denied; Salcedo v. Asociacion Cubana,* 368 So.2d 1337, 1339 (Fla.Dist.Ct.App.1979) (condemning "gotcha" litigation tactics); *Thomas v. City of Miami Beach,* 753 So.2d 591, 591 (Fla. Dist.Ct.App.2000) (disapproving of "gotcha" administrative practices) *trans. denied; see also In re Marriage of Tearman,* 617 N.E.2d at 977 (observing that the purpose of permitting a credit against the non-custodial parent's basic support obligation for educational support costs is to avoid double payment of the same expense resulting in a windfall for the custodial parent). Thus, I believe that equity dictates that the agreement should be construed in Jerry's favor to prevent a severe injustice.[6]

---

5. The record does not indicate exactly how much Jerry paid in educational support expenses while Stephanie was in college. When Jerry attempted to testify regarding the amount of these expenditures, Margaret objected on the grounds of relevance, and that objection was sustained by the trial court. However, our independent research reveals that the current yearly cost for room, board, and tuition at Asbury College, Kentucky, which Stephanie attended for one year, is approximately $17,000. *See* Asbury College website at http://www.asbury.edu/admissions/expenses/cost.cfm (last visited May 25, 2002). The yearly cost for room, board, and tuition at Anderson College, Indiana, which Stephanie attended for three years, is approximately $21,400. *See* Anderson College website at www.anderson.edu/finaid/costs/html

(last visited May 25, 2002). These annual fees do not include books and supplies, spending money, transportation, and other incidental costs. They also do not take into account any grants or scholarships that Stephanie may have received to offset these expenses.

6. Had Jerry affirmatively pleaded the defenses of laches or equitable estoppel I would have found in his favor on either of those bases. The equitable doctrine of laches precludes a plaintiff from asserting a claim where the defendant shows: (1) plaintiff's inexcusable delay in asserting rights; (2) plaintiff's implied waiver arising from knowing acquiescence in existing conditions, and (3) circumstances causing the defendant prejudice. *Pickett v. Pickett,* 470 N.E.2d 751, 754 (Ind.Ct.App.1984). The mere passage of time

At the same time, I acknowledge that child support is intended to provide for the support and maintenance of the parties' children, and that the amount of support due to Stephanie is considerably less under Jerry's interpretation of the agreement. Nevertheless, I perceive no injustice to Stephanie and no undue burden on Margaret in upholding the agreement according to Jerry's interpretation. Parties are free to draft their own settlement agreement upon dissolution of their marriage, and those agreements may provide for the payment of child support. *See Niccum v. Niccum*, 734 N.E.2d 637, 639 (Ind.Ct.App. 2000). Once such agreement is approved by the trial court and incorporated into the divorce decree, it becomes legally binding and enforceable. *See In re Marriage of Loeb*, 614 N.E.2d 954, 957 (Ind.Ct.App. 1993).

In this instance, the parties entered into an agreement that more than adequately provided for Stephanie's care and support. In accordance with what he believed to be the terms of that agreement, Jerry made regular non-educational child support payments until Stephanie turned eighteen and began attending college.[7] Thereafter, Jerry paid for Stephanie's room, board, and tuition at two fine private colleges. He also paid for her books and supplies, medical insurance, spending money, and other incidental expenses, leaving Margaret to provide for Stephanie's care and support only during vacations and summer break. Appellant's App. p. 16, 17, 18, 19. The purpose of child support "is the welfare of the child and not the punishment of the father." *Rohn v. Thuma*, 408 N.E.2d 578, 582 (Ind.Ct.App.1980) (quoting *Commonwealth v. Larsen*, 211 Pa.Super. 30, 234 A.2d 18, 20 (1967)). It is apparent from the record that Stephanie was well provided for during her minority and will suffer no prejudice as a result of a ruling in her father's favor.

That being said, I also take issue with the rule that prevents Jerry from receiving a retroactive credit against his non-educational child support payments if the agreement is interpreted in Margaret's favor. He is not permitted to receive this credit because it constitutes a modification of the existing child support payment, and a bright-line rule exists that any modification must be pre-approved by the court. *See Thacker*, 710 N.E.2d at 944. This bright-line rule operates to prevent the custodial parent, as constructive trustee of the child's support, from contracting away the benefits of the trust. *See Nill v. Mar-*

---

is insufficient to establish laches as there must be unreasonable delay and prejudice to the opposing party. *Id.* The defense of equitable estoppel is similar to the laches defense but contains the additional element of reliance by the defendant. *Id.* The elements of these defenses are satisfied inasmuch as Margaret remained inexcusably silent for four and one-half years, permitting Jerry to rely to his detriment upon her apparent acquiescence to his interpretation of the child support provisions of their settlement agreement. However, as Ind. Trial Rule 8(C) requires that the defenses of laches and equitable estoppel be affirmatively pled, and Jerry did not raise those defenses in his pleadings, we cannot reverse the trial court and uphold his inter-

pretation of the contract on either of those bases. *See* Ind. Trial Rule 8 (providing in relevant part: "A responsive pleading shall set forth affirmatively and carry the burden of proving . . . estoppel [and] laches").

7. In fact, In April 1990 Jerry even agreed to an increase in his support payments from $231 a week to $280 a week (constituting $140 per week per child). Appellant's App. p. 11. Further, notwithstanding the fact that Stephanie's older brother turned twenty-one in 1996, Jerry continued to pay $280 a week according to the in gross order until August 1999 when Stephanie turned twenty-one. Appellant's App. p. 7, 12, 13.

*tin,* 686 N.E.2d 116, 118 (Ind.1997).[8] It is apparently based on the premise that the custodial parent, usually the mother, is incapable of negotiating in the best interests of herself and her child and must be protected by the judicial system from the possible oppression and machinations of the non-custodial parent.[9] Such premise is patronizing and unsupportable in light of the realities of today's society where it can no longer be presupposed that women are inadequate representatives of their own and their children's interests. Moreover, this rule against private ordering inappropriately undermines the role of the individual in our society and the constitutional right to contract. Where the justification for the rule has disappeared, so should the rule. *Cf. Martin,* 686 N.E.2d at 118–19 (Boehm, J., dissenting) (arguing that the rationale for the rule requiring court pre-approval of child support modifications "disappears where both parents agree," and advocating for an exception to the rule where the custodial and non-custodial parents agree to a reduction in support after the death or emancipation of a child). For this reason, the rule should not be applied in this instance to prevent Jerry from receiving a retroactive credit against his non-educational support obligation.

In sum, I believe that Jerry's interpretation of the contract was proper and supported by the fact that Margaret failed to raise any ambiguity for four and one-half years. Accordingly, I would find that Jerry was acting pursuant to the terms of the settlement agreement when he ceased paying non-educational child support after Stephanie began attending college. Therefore, I vote to reverse the judgment of the trial court.

---

8. Other cases where the courts have declined to enforce an agreement between parents modifying the child support obligation include: *Thacker,* 710 N.E.2d at 944; *Ort v. Schage,* 580 N.E.2d 335, 336 (Ind.Ct.App. 1991); *Kaplon v. Harris,* 567 N.E.2d 1130, 1132 (Ind.1991); *Pickett v. Pickett,* 470 N.E.2d 751, 754 (Ind.Ct.App.1984); *Haycraft v. Haycraft,* 176 Ind.App. 211, 375 N.E.2d 252, 255 (1978); *Grace v. Quigg,* 150 Ind.App. 371, 276 N.E.2d 594, 601 (1971).

9. Ironically, it has been my experience that judges often cast only a cursory glance over such agreements. Thus, a rule designed to protect the custodial parent and child simply serves to create greater expense for the parties and to ensure the employment of lawyers.